UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMANDA L. HAZELTON,

                     Plaintiff,

v.                                                                     6:16-CV-0427
                                                                     (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

AMANDA L. HAZELTON
 Plaintiff, *Pro Se*
424 N. Main Street, #2B
Herkimer, NY 13350

U.S. SOCIAL SECURITY ADMIN.                  FERGUS J. KAISER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Amanda L. Hazelton ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), is Defendant's motion for judgment on the pleadings. (Dkt. No. 13.) For the reasons set forth below, Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1980, making her 31 years old at the alleged onset date and 34 years old at the date of the final Agency decision. Plaintiff has a high school education with an associate's degree, and past work as a convenience store clerk and floral assistant/florist-retail sales clerk. Plaintiff was insured for disability benefits under Title II until December 31, 2016. Generally, Plaintiff alleges disability consisting of post-traumatic stress disorder ("PTSD"), bipolar disorder, depression, and social anxiety disorder.

### B. Procedural History

Plaintiff applied for Title II Disability Insurance Benefits on May 10, 2012, alleging disability beginning November 12, 2011. Plaintiff's application was initially denied on September 7, 2012, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). On June 19, 2015, Plaintiff appeared at a video hearing before ALJ Grenville W. Harrop Jr. (T. 23, 36.) On September 19, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 23-36.) On February 18, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 13-21.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 12, 2011, the alleged onset date. (T. 24.) Second, the ALJ found that Plaintiff's arterial hypertension, hypothyroidism, asthma, bipolar disorder, depressive

disorder, PTSD, unspecified personality disorder, and cannabis abuse in remission are severe impairments. (T. 25.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 25-33.) More specifically, the ALJ considered Listings 4.00 (cardiovascular system impairments), 9.00 (endocrine disorders), 12.00 (mental disorders), 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.08 (personality disorders). (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work as defined in 20 C.F.R. [§] 404.1567(b) except frequent contact with others. In addition, the claimant has moderate limitations in her capacity to interact appropriately with others, maintain socially appropriate behavior without exhibiting behavioral excitement and function at a consistent pace in a work setting.

(T. 33.) In his discussion, the ALJ also indicated that he limited Plaintiff to "unskilled, simple and repetitive work activity." (T. 33.) Fifth, the ALJ found that Plaintiff has past work as a convenience store clerk (light, SVP 2) and floral assistant/florist-retail sales clerk (light, SVP 3), though the ALJ also found that Plaintiff is unable to perform this past work based on the restrictions in her RFC. (T. 34.) Sixth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including housekeeping, plastic molding machine tender, and small products assembly worker. (T. 34-35.)

D.   **The Parties' Briefings on Their Cross-Motions**

Plaintiff did not file a brief in this matter despite being afforded multiple opportunities to do so. (*See generally* Docket Sheet.) The Court is entitled to consider the record without the benefit of any arguments she might have put forth. General Order #18, at 7.

Generally, Defendant asserts three arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ's Step Three determination (finding Plaintiff did not meet or equal a Listed impairment and that Plaintiff had no restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no repeated episodes of decompensation of extended duration) was supported by substantial evidence. (Dkt. No. 13, at 16-20 [Def. Mem. of Law].) Second, Defendant argues that the RFC determination is supported by substantial evidence. (Dkt. No. 13, at 20-23 [Def. Mem. of Law].) More specifically, Defendant argues that the opinion evidence from consultative examiner Dr. Hansen, State Agency psychological consultant Dr. Tzetzo, and treating physician Dr. Patel supported the ALJ's finding of moderate mental limitations and that consultative examiner Dr. Caldwell's opinion overall did not support a finding of disability. (Dkt. No. 13, at 20-21 [Def. Mem. of Law].) Defendant also argues that the ALJ's credibility findings made as part of assessing the RFC were supported by legally sufficient reasons and substantial evidence. (Dkt. No. 13, at 22-23 [Def. Mem. of Law].) Third, and finally, Defendant argues that the Step Five determination was supported by substantial evidence based on the ALJ's reliance on vocational expert testimony in response to a hypothetical question that paralleled the ALJ's RFC finding. (Dkt. No. 13, at 22-23 [Def. Mem. of Law].)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d

4

856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination

considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

6

## III. ANALYSIS

### A. Whether the ALJ Erred in Determining Plaintiff Did Not Meet or Equal a Listed Impairment

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 16-20 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F.Supp.2d 252, 272 (N.D.N.Y. 2009) (citing *Naegele v. Barnhart*, 433 F.Supp.2d 319, 324 (W.D.N.Y. 2006)). "To meet a Listing, Plaintiff must show that her medically determinable impairment satisfies all of the specified criteria in a Listing." *Rockwood*, 614 F.Supp.2d at 272 (citing 20 C.F.R. § 404.1525(d)). "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Rockwood*, 614 F.Supp.2d at 272 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)). Additionally, a court may be able to uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence. *Rockwood*, 614 F.Supp.2d at 273 (citing *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982)).

In this matter, there is no evidence indicating that Plaintiff met the severity outlined in any of the applicable Listings. The ALJ explicitly considered physical Listing sections related to arterial hypertension, hypothyroidism, and asthma and noted specific requirements within those Listings that were not shown by the evidence in the record. (T. 26.) The ALJ also expressly provided rationale for why Plaintiff did not meet the applicable Listings for mood disorders, anxiety disorders, and personality disorders; in doing so, he provided an extensive discussion of

the mental health treatment evidence, rated the severity of the impact of Plaintiff's mental impairments on her functioning (*i.e*., no restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, and pace, and no episodes of decompensation of extended duration), and indicated that he had relied on opinions from the consultative examiner and the State Agency psychological consultant when making his findings. (T. 26-33.) The ALJ's thorough explanation of his findings regarding the mental health Listings shows that those findings were supported by substantial evidence.

Notably, no opinion indicates that Plaintiff's mental conditions were of the severity required to meet any of the applicable Listings. Consultative examiner Dr. Hansen observed on August 31, 2012 that Plaintiff was cooperative and responsive to questions, had an overall adequate presentation, was well-groomed, had normal posture and motor behavior, appropriate eye contact, fluent and clear speech, coherent thoughts, a full and appropriate affect, a neutral mood, intact attention, concentration and memory, and average estimated intellectual functioning; Dr. Hansen opined that Plaintiff could follow and understand simple directions and instructions, perform simple and complex tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and deal appropriately with stress. (T. 465-67.) State Agency psychological consultant Dr. Tzetzo opined on September 7, 2012 that Plaintiff had no restrictions in activities of daily living, moderate difficulties in social functioning, mild difficulties in concentration, persistence, and pace, and no episodes of decompensation of extended duration. (T. 483.) Dr. Tzetzo's functional assessment indicated primarily moderate

8

limitations with a sole marked limitation in a single activity related to social functioning. (T. 469-70.)

On November 25, 2013, consultative examiner Dr. Caldwell observed abnormalities including pressured speech, an anxious and tense mood, a very tense affect, an inability to complete serial three testing, and fair-to-poor insight and judgment, but opined that Plaintiff had only moderate limitations in performing complex tasks independently, maintaining attention and concentration for rote tasks, and using public transportation. (T. 670-72.) Lastly, treating physician Dr. Patel opined on April 15, 2014 that Plaintiff's impairments caused moderate limitations in her abilities to interact significantly with others, maintain socially appropriate behavior without exhibiting behavioral extremes, and function in a work setting at a consistent pace. (T. 667.) Dr. Patel opined that there was no evidence of limitation in Plaintiff's abilities to understand, remember, and follow instructions, maintain attention and concentration, make simple decisions, and maintain basic standards of personal hygiene and grooming. (*Id.*) Dr. Patel also opined that these restrictions were expected to last for only four to six months. (*Id.*) Although these opinions and the rest of the evidence show that Plaintiff suffered from symptoms that caused limitations in her work-related functioning, they also show that the ALJ's finding that these symptoms did not meet or equal the severity of a listed impairment is supported by substantial evidence.

Although the record contains evidence of at least eight short-duration hospitalizations related to psychiatric symptoms between November 2011 and October 2013, the overall evidence (discussed in detail by the ALJ) indicates that these were temporary exacerbations of suicidal ideation rather than her typical level of functioning while compliant with prescribed

9

medications and other treatments. (T. 327-33, 351-57, 362-82, 387-93, 403-06, 488-98, 557-79, 674-76.) The ALJ found that these hospitalizations did not qualify as repeated episodes of decompensation of extended duration[1] because Plaintiff "promptly responded to her inpatient treatment and did not require prolonged hospitalizations" and because the medical evidence as a whole "establishes that the claimant's multiple hospitalizations resulted from her failure to take her medications [] and to keep her medical appointments." (T. 30.) Plaintiff's hospital admissions typically lasted between two and five days: November 15 to 17, 2011; May 2 to 6, 2012; June 15 to 18, 2012; September 19 to 21, 2012; February 21 to 26, 2013; and October 25 to 29, 2013. (T. 327-33, 387-93, 403-06, 488-98, 557-79, 679-95.) She also had an admission from April 5 to 13, 2012 with a subsequent re-admission from April 18 to 23, 2012. (T. 351-57, 362-82.) However, it was noted on April 19, 2012 that Plaintiff had not been taking the Abilify that she had been prescribed for her bipolar disorder during the first admission, something which supports the ALJ's finding that Plaintiff's medication non-compliance was a contributing factor in her need for hospitalization. (T. 30, 376.) The record as a whole shows that, as Plaintiff engaged in counseling and medication management, these exacerbations became less frequent,

---

[1] The applicable regulations define "repeated episodes of decompensation, each of extended duration" as three episodes within one year, or an average of every four months, each lasting at least two weeks, though more frequent episodes of shorter duration can be used to "determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." 20 C.F.R. § 404, Subpart P, App. 1, 12.00(C)(4) (Aug. 12, 2015). Episodes of decompensation are defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, and pace." (*Id.*) Episodes of decompensation can be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation, or can be inferred from medical records showing a significant alteration in medication, documented need for a more structured support system (such as hospitalization), or other relevant information. (*Id.*)

with only four occurring between June 2012 and April 2014. A presentation to the emergency room in October 2013 was solely based on the fact she had run out of her medications and would not be able to see a psychiatrist for refills for a few weeks due to moving. (T. 674.) Additionally, a notation from an emergency room presentation for suicidal thoughts on April 27, 2012 indicates that an examining source felt that Plaintiff was "very manipulative" and did not recommend that she be admitted again at that time, to which Plaintiff responded that she would rather go home than deal with that source, indicating she felt she would be safe. (T. 374.) Given the ALJ's consideration of the circumstances of Plaintiff's hospital admissions, the evidence showing Plaintiff generally had less significant symptoms when compliant with her medications and other treatment, and the fact that Plaintiff's pattern of episodes does not fall clearly within the frequency and duration parameters specified in the regulation for establishing repeated episodes of decompensation of extended duration, this Court finds that the ALJ's refusal to characterize these episodes as repeated episodes of decompensation of extended duration that would satisfy the mental Listings is supported by substantial evidence. *See Campbell v. Astrue*, 713 F.Supp.2d 129, 132 (N.D.N.Y. 2010) ("Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.") (citing *Rutherford*, 65 F.2d at 62); *Perkins v. Astrue*, 32 F.Supp.3d 334, 337 (N.D.N.Y. 2012); *Swan v. Comm'r of Soc. Sec.*, No. 7:14-CV-0773, 2015 WL 5512686, at *3 (N.D.N.Y. Sept. 15, 2015).

    For all these reasons, the ALJ's finding at Step Three that Plaintiff did not meet or equal a Listing was supported by substantial evidence, and remand is not required on this basis.

**B. Whether the ALJ Erred in Assessing Plaintiff's RFC**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 20-23 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Residual functional capacity ("RFC") is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996)). "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6; *accord* SSR 85-15, 1985 WL 56857 (Jan. 1, 1985).

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F.Supp.2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (citing *Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008)). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical

consultants because these consultants are qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(1)(vi), 404.1513(c), 404.1527(e); *see also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, No. 5:14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

As Defendant notes in her brief, the ALJ explicitly indicated agreement with the opinions of the "consultant psychologist"[2] and the non-examining State Agency psychological consultant Dr. Tzetzo when formulating the RFC. (Dkt. No. 13, at 21 [Def. Mem. of Law].) Dr. Teztzo's overall opinion that Plaintiff could perform simple entry-level work in a low-contact setting is consistent with the findings in the RFC. (T. 485.) Additionally, the ALJ thoroughly discussed Plaintiff's mental health treatment throughout the relevant period, including the course of her hospitalizations and her outpatient treatment. (T. 26-30.) This evidence, along with the above opinions, amounts to "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Henry v. Astrue*, 32 F.Supp.3d 170, 188 (N.D.N.Y. 2012)

---

[2] Although there were two mental consultative examiners in the record (Dr. Hansen and Dr. Caldwell), the ALJ does not specify whether he was indicating agreement with only one or both of these sources. (T. 33.) However, as will be discussed, neither consultative examiner's opinion contradicted the ALJ's conclusion that Plaintiff was not disabled.

(quoting *Perales*, 402 U.S. at 401). However, two points related to the other opinions in the record require further analysis.

First, although the ALJ did not explicitly indicate the amount of weight he afforded to the April 2014 opinion from treating physician Dr. Patel, a review of Dr. Patel's opinion indicates that this omission in the ALJ's analysis would be harmless. *See Reider*, 2016 WL 5334436, at *6 (noting that the failure to explicitly assign weight to an opinion is harmless in certain situations, such as "where the ALJ's decision reflects that the opinion was considered or where the limitations assessed in the opinion are ultimately accounted for in the RFC"); *Blabac v. Comm'r of Soc. Sec.*, No. 3:08-CV-0849, 2009 WL 5167650, at *9 (N.D.N.Y. Dec. 18, 2009) (collecting cases which indicate harmless error where the opinions that the ALJ failed to weigh either did not conflict with the ALJ's findings or written consideration of the opinions would not have changed the outcome of the ALJ's decision). The ALJ noted in the decision that Dr. Patel had "assessed the claimant's limitations in mental functioning as moderate." (T. 30.) Additionally, the moderate limitations the ALJ included in the RFC directly track the moderate limitations that Dr. Patel opined. (T. 33, 667.) Consequently, although the ALJ did not explicitly discuss the weight he afforded to Dr. Patel's opinion, it is clear that the ALJ relied on Patel's opinion to a significant degree in assessing Plaintiff's mental limitations. The ALJ's failure to specify the weight afforded to Dr. Patel's opinion is therefore harmless. *See Reider,* 2016 WL 5334436, at *6; *Johnson*, 817 F.2d at 986 ("[W]here the application of the correct legal principles to the record could only lead to one conclusion, there is no need to require agency reconsideration.").

Second, although the ALJ does not specifically discuss the November 25, 2013 consultative examination and resulting opinion from Dr. Caldwell, this omission is likewise harmless because Dr. Caldwell's opinion does not support a finding that Plaintiff is disabled. As

14

noted previously, Dr. Caldwell opined that Plaintiff had only moderate limitations in performing complex tasks independently, maintaining attention and concentration for rote tasks, and using public transportation. (T. 672.) Additionally, although Dr. Caldwell did opine that Plaintiff's significant depressive, manic, and anxiety symptoms would make it unlikely she could be successful in a work environment at that time, Dr. Caldwell specified that such limitation was expected to last only three to six months. (*Id.*) The ALJ's failure to provide specific reasons for rejecting Dr. Caldwell's opinion of temporary disability does not warrant remand for three reasons: (1) the opinion that Plaintiff was unable to work was internally inconsistent with Dr. Caldwell's functional opinion showing only a few moderate limitations; (2) an opinion on whether a claimant is disabled is an issue reserved to the Commissioner that is not entitled to special deference; and (3) even if accepted, Dr. Caldwell's opinion that Plaintiff would be unable to work for three to six months does not establish the 12-month duration required to establish disability under the applicable regulations. *See Fuimo v. Colvin*, 948 F.Supp.2d 260, 267 (N.D.N.Y. 2013) (noting that it was proper for the ALJ to give little weight to an opinion that the plaintiff was severely disabled and not competitively employable because that concerned an issue reserved to the Commissioner) (citing 20 C.F.R. § 416.927(d)(1)); 20 C.F.R. § 404.1505(a) (indicating that disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). Consequently, the ALJ's failure to provide a specific explanation for the weight afforded to Dr. Caldwell's opinion is harmless because Dr. Caldwell's opinion does not show that Plaintiff was disabled or otherwise limited to a greater extent than accounted for in the RFC assessment. *See Barringer v. Comm'r of Soc. Sec.*, 358 F.Supp.2d 67, 78 (N.D.N.Y. 2005)

("Where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)); *see also Reider,* 2016 WL 5334436, at \*6; *Johnson*, 817 F.2d at 986.

For all these reasons, the RFC determination was supported by substantial evidence and remand is not required on this basis.

### C. Whether the ALJ Erred at Step Five in Determining that Significant Work Existed that Plaintiff Was Able to Perform with Her Limitations

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 23-24 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

"At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(4)(v)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [] and [the hypothetical] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).

Because this Court finds that the ALJ's other findings were supported by substantial evidence and the hypothetical questions to the vocational expert encompassed the restrictions contained in the RFC, it also finds that the ALJ's Step Five finding relying on the vocational expert's answers to those questions was supported by substantial evidence. (T. 65-68.)

16

For all these reasons, the ALJ's Step Five determination was supported by substantial evidence and remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: April 21, 2017
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge